UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LARRY JOHN WILSON,<br><br>        Plaintiff,<br><br>v.<br><br>THE CITY OF COEUR D'ALENE, an Idaho municipal corporation, COEUR D'ALENE POLICE CHIEF WAYNE LONGO, WENDY CARPENTER, and OFFICER ALAN WINSTEAD,<br><br>        Defendants. | Case No. 2:09-CV-00381-EJL<br><br>**MEMORANDUM ORDER** |

# INTRODUCTION

Pending before the Court in the above-entitled matter is Defendants City of Coeur d'Alene Police Chief Wayne Longo, City of Coeur d'Alene, Officer Wendy Carpenter, and Officer Alan Winstead's Motion for Summary Judgment. (Collectively referred to as "Defendants") (Mot. for Summ. J., Dkt. 18.) The motion is made pursuant to Federal Rule of Civil Procedure 56. The matter is ripe for the Court's consideration. Having fully

**MEMORANDUM ORDER - 1**

reviewed the record herein, the Court finds that the facts and legal arguments are adequately represented in the briefs and record. Accordingly, and in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without oral argument.

## FACTUAL AND PROCEDURAL BACKGROUND

The complaint in this action alleges violations of 42 U.S.C. § 1983 in connection with the arrest, incarceration, and prosecution of Larry John Wilson by the Defendants. The facts revolve around the events occurring on the evening of July 4, 2007 in the City of Coeur d'Alene, Idaho. At approximately 10:30 p.m., Mr. Wilson, then 66 years old, was driving his vehicle from The Corner Bar when he was pulled over by Coeur d'Alene Police Officer Alan Winstead for making an illegal turn and failing to use a turn signal. (Dkt. No. 25, p. 2, Dkt. No. 26, Ex. A.) During the traffic stop, Officer Winstead noticed Mr. Wilson's face was "very flushed and his eyes were red and glassy." The Officer inquired of Mr. Wilson if he had consumed any alcohol or taken any medications to which Mr. Wilson stated he had just come from a bar and had drank some beer.[1] (Dkt. Nos. 25, 26, Ex. A.) Officer Winstead asked Mr. Wilson to exit the vehicle and had him perform three standardized Field Sobriety Tests ("FST"); the walk-and-turn, one-leg-

---

[1] Mr. Wilson's Affidavit states that he told the Officer that he had drank "part of one beer" and was taking a number of medications. (Dkt. No. 25, p. 2.) Officer Winstead's incident report narrative states that he told him he had drank "1 beer" and was taking several medications. (Dkt. No. 26, Ex. A.) The difference between the two accounts does not appear to be material, regardless the Court will construe the facts in favor of Mr. Wilson for purposes of this Motion.

**MEMORANDUM ORDER - 2**

stand, and the horizontal gaze nystagmus. Officer Winstead determined Mr. Wilson had performed the FST "unsatisfactorily" and placed him under arrest for DUI. (Dkt. No. 26, Ex. A and Ex. C.) Mr. Wilson was transported to the Kootenai County Public Safety Building where a breath test was administered. Mr. Wilson blew a .000/.000. (Dkt. No. 26, Ex. E.)

Post Falls Police Department's Drug Recognition Expert, Brenda Smith, then performed a Drug Recognition Evaluation ("DRE") of Mr. Wilson and concluded he was under the influence of narcotic analgesic/depressants. (Dkt. No. 26, Ex. D.) Mr. Wilson then requested independent testing. He was transported to Kootenai County Medical Center where a urine tox-screen was conducted. (Dkt. No. 26, Ex. F.) Immediately after the test was completed, but before the results were obtained, Officer Winstead returned Mr. Wilson to the jail and booked him for DUI-Drugs. (Dkt. No. 26, Ex. A.) The independent test results later came back negative for drugs and alcohol. (Dkt. No. 26, Ex. E.)The charge of driving under the influence pursuant to Idaho Code § 18-8004 was dismissed on July 18, 2007. (Dkt. No. 26, Ex. G.) The Idaho Transportation Department rescinded the administrative license suspension of Mr. Wilson's driver's license on August 13, 2007. (Dkt. No. 26, Ex. H.)

On August 7, 2009, Mr. Wilson filed his Complaint and Demand for Jury Trial in this case raising a single count for violation of 42 U.S.C. § 1983 Action for Deprivation of Civil Rights. (Dkt. No. 1.) Mr. Wilson alleges he was unlawfully arrested, maliciously

prosecuted and unlawfully incarcerated. (Dkt. No. 1.) Defendants have filed a motion for summary judgment that the Court now takes up.

## STANDARD OF REVIEW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no 'genuine issue of material fact,' since a completely failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.[2]

---

[2] *See also,* Rule 56(3) which provides, in part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

**MEMORANDUM ORDER - 4**

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.3d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co. Inc.*, 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. *See, e.g., British Motor Car Distrib. V. San Francisco Automotive Indus. Welfare Fund*, 883 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992).

## DISCUSSION

1.  **Count I: 42 U.S.C. § 1983 Claims**

    Congress has created a cause of action against private individuals who, while acting under color of law, violate the constitutional rights of private citizens. Section 1983 provides in pertinent part:

    > Every person who, under color of any statute, […] subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivations of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured.

    42 U.S.C. § 1983. In order for a plaintiff to prevail on a § 1983 claim they must show that (1) the actor that deprived them of their rights acted under color of law and (2) the action actually deprived them of a constitutional right. In this case the first requirement is not disputed by either of the parties. Police officers carrying out their duties act under color of law. Thus it is the second requirement that is at issue here. Mr. Wilson contends that the constitutional rights which were violated in this case are the right to be free from unlawful arrest, malicious prosecution, and wrongful incarceration. Defendants assert that no rights were violated.

    While § 1983 provides a cause of action against police officers for constitutional violations that they might have committed, they are also entitled to qualified immunity from § 1983 claims. Qualified immunity operates to "shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with law." *Pearson v. Callahan*, 129 S.Ct. 808 (2009). The court in *Pearson* rejected the mandatory

two-step approach that it had announced in *Saucier v. Katz*, 533 U.S. 194 (2001). *Id.* at 818. That approach had required courts to first decide if the defendant's "conduct violated a constitutional right" then decide whether the right was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 201. Courts are now free to decide either question in whatever order is most appropriate given the circumstances.

The rights Mr. Wilson claims were violated here are guaranteed by the federal Constitution in the Fourth and Fourteenth Amendment guarantees against unlawful seizure and due process. These are clearly established rights that any reasonable government actor would have shaped their conduct to preserve. What is at issue here is whether those constitutional rights were violated in this case and, thus, whether the Defendants are entitled to qualified immunity. Such questions are appropriate for summary judgment since the doctrine, if applicable, confers immunity from the suit itself. *Pearson*, 129 S.Ct. at 815 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

### A. *Unlawful Arrest*

An officer will not be held to have committed a violation of a defendant's Fourth Amendment right to be free from unlawful arrest if the arrest was carried out with probable cause. *Grant v. City of Long Beach*, 315 F.3d 1081, 1089 (9th Cir. 2002) ("Courts have long held that the Fourth Amendment requires probable cause before an officer may arrest an individual.") (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). In order to assess whether probable cause exists a court must inquire "if 'at the moment the arrest

**MEMORANDUM ORDER - 7**

was made . . . the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that the suspect had violated a criminal law." *Id.* at 1085 (quoting *Orin v. Barclay*, 272 F.2d 1207, 1218 (9th Cir. 2001)). The Ninth Circuit requires an objective standard whereby the district court is to evaluate whether "a 'reasonable officer' would have made the arrest based on the totality of the circumstances." *Id.* at 1089. This is a fact specific inquiry. As it must, the Court will view all evidence in the light most favorable to the plaintiff to determine if there is a genuine issue of material fact for trial.

### (1)  Probable Cause of Driving Under the Influence

Here, Mr. Wilson was arrested during the traffic stop for driving under the influence. He was later arrested and cited for DUI-drugs. (Dkt. No. 26, Ex. B.) In Idaho, driving under the influence of alcohol, drugs, or any other intoxicating substances, is governed by Idaho Code § 18-8004.

> (1) (a) It is unlawful for any person who is under the influence of alcohol, drugs or any other intoxicating substances, or any combination of alcohol, drugs and/or any other intoxicating substances, or who has an alcohol concentration of 0.08, as defined in subsection (4) of this section, or more, as shown by analysis of his blood, urine, or breath, to drive or be in actual physical control of a motor vehicle within this state, whether upon a highway, street or bridge, or upon public or private property open to the public.
> 
> ...
> 
> (2) Any person having an alcohol concentration of less than 0.08, as defined in subsection (4) of this section, as shown by analysis of his blood, urine, or breath, by a test requested by a police officer shall not be prosecuted for

> driving under the influence of alcohol, except as provided in subsection (3)...
>
> (3) If the results of the test requested by a police officer show a person's alcohol concentration of less than 0.08, as defined in subsection (4) of this section, such fact may be considered with other competent evidence of drug use other than alcohol in determining the guilt or innocence of the defendant.

Having viewed the facts in the light most favorable to Mr. Wilson, the Court finds there was probable cause to arrest for DUI based on Officer Winstead's physical observations, the results of the FST, and the later DRE.[3] After executing the traffic stop and approaching the vehicle, Officer Winstead observed Mr. Wilson's eyes were red and he was sweating. Mr. Wilson admitted to having just left a bar where he partook in some alcohol. Officer Winstead then administered the three standardized FST; which Mr. Wilson failed. (Dkt. No. 26, Ex. C.) At the jail, the DRE further concluded that Mr. Wilson was under the influence. Officer Winstead's Probable Cause Affidavit, and report narrative, confirm the arrest was based on: 1) admission to drinking alcoholic beverages, 2) glassy/bloodshot eyes, 3) failing of the three FST, and 4) the DRE Evaluation. (Dkt. No. 26, Ex. C.) Based on these factual and practical considerations and considering the totality of the circumstances, Officer Winstead possessed facts which would lead a person of ordinary prudence to entertain a fair and honest belief that the suspect has committed the crime of driving under the influence. *See Hopkins v. Bonvicino*, 573 F.3d 752, 767

---

[3] Mr. Wilson's arguments made in response to the Motion for Summary Judgment challenge the reliability of the FST and DRE and offer an alternative explanation for his red eyes and sweaty appearance. Such arguments, however, do not dispute the Officers' observations which make up the basis for the probable cause finding.

(9th Cir. 2009) ("Officers have probable cause for a search when 'the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found.'") (citation omitted).

      Officer Winstead's observations of Mr. Wilson at the time of the initial stop may appear to be scant evidence of probable cause when considered singularly and/or in hindsight with the benefit of the test results. However, when viewing the observations in the totality of the circumstances at the time of the arrest, probable cause existed for the DUI arrest. It was late in the evening, approximately 10:30 p.m., Mr. Wilson was observed leaving The Corner Bar, made an illegal turn, was flush and his eyes were red and glassy, Mr. Wilson admitted to consuming some alcohol, and he failed the FST. These facts are sufficient evidence upon which Officer Winstead could base his probable cause finding and arrest Mr. Wilson for a DUI.  Courts in Idaho have found probable cause exists to arrest for a DUI where the individual admitted to drinking four beers but was unable to say where he had been drinking or where he was going, his eyes were bloodshot and glossy, his speech was "thick," and he failed the Horizontal Gaze Nystagmus (HGN). *State v. Cantrell*, 233 P.3d 178, 179 (Idaho App. 2010).

      Undoubtedly the circumstances here could have been stronger to support a finding of probable cause. That, however, is not what is required.  The probable cause determination asks that we answer the question of "if 'at the moment the arrest was made . . . the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing'

that the suspect had violated a criminal law." *Grant*, 315 F.3d at 1089 (quoting *Orin v. Barclay*, 272 F.2d 1207, 1218 (9th Cir. 2001)). Upon the facts and circumstances known to Officer Winstead at the time of the arrest, there was sufficient probable cause to arrest Mr. Wilson. *See United States v. Hillison*, 733 F.2d 692, 697 (9th Cir. 1984) ("Arresting officers have probable cause to make warrantless arrests if, at the moment of arrest, facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense."); *State v. Jenkins*, 155 P.3d 1157, 1161 (Idaho 2007) ("Judicial determination of probable cause focuses on the information and facts the officers possessed at the time.") (citation omitted). Because probable cause existed here, there was no violation of Mr. Wilson's constitutional rights. Even if insufficient probable cause to arrest existed, the Court finds the Defendants would be entitled to qualified immunity.

### (2) Qualified Immunity

Mr. Wilson argues the Defendants here are not entitled to qualified immunity because their actions maliciously and intentionally violated his civil rights. In particular, Mr. Wilson claims his arrest was unreasonable and in clear violation of the law because it was without probable cause after receiving the results of tests which exculpated him. (Dkt. No. 23, p. 14.) Maintaining he should have been released after the "blow" test results proved he had not been driving under the influence of alcohol. The Court finds otherwise.

**MEMORANDUM ORDER - 11**

"The Supreme Court has held that 'it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present.'" *Crowe v. County of San Diego*, 608 F.3d 406, 433 -434 (9th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). "When that happens, the officials 'should not be held personally liable.'" *Id.* The Ninth Circuit has "held that officers are immune from suit 'when they reasonably believe that probable cause existed, even though it is subsequently concluded that it did not, because they 'cannot be expected to predict what federal judges frequently have considerable difficulty in deciding and about which they frequently differ among themselves.'" *Id.* (quoting *Smiddy v. Varney*, 665 F.2d 261, 269 (9th Cir. 1981) (quoting *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 456 F.2d 1339, 1349 (2d Cir. 1972) (Lumbard, J., concurring)), *overruled on different grounds by Beck v. City of Upland*, 527 F.3d 853, 865 (9th Cir. 2008).

Defendants here are entitled to qualified immunity because they could have reasonably believed that probable cause existed based on Officer Winstead's observations of Mr. Wilson's appearance, sweaty and red eyes, the failed FST, and the admission to having consumed alcohol. Further, the DRE also concluded Mr. Wilson was under the influence. In sum, even if the Court had not found probable cause existed here, the Court would find the Defendants are entitled to qualified immunity on this claim because a reasonable officer could have believed that probable cause existed. Further, Officer Winstead was not required to release Mr. Wilson after the lab tests were returned. The chemical testing results do not eliminate the probable cause of the crime of a DUI that

existed from the direct and circumstantial evidence of impairment as stated above. *See State v. Robinett*, 106 P.2d 436, 438 (Idaho 2005) (recognizing the crime of DUI may be proven either by direct and circumstantial evidence of impairment of ability to drive or, alternatively, by chemical testing and forensic evidence that the defendant's concentration exceeded the statutory limit).

*B. Malicious Prosecution*

In order to prevail on a § 1983 malicious prosecution claim "a plaintiff 'must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right.'" *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054 (9th Cir. 2009) (quoting *Freeman v. City of Santa Ana*, 68 F.3d 480, 489 (9th Cir. 1995) (alterations in original). It does not appear Mr. Wilson adequately alleged malice on the part of the Defendants or that the prosecution was for the purpose of denying him his constitutional rights. Regardless, the threshold question is whether there was probable cause to initiate the prosecution. The Ninth Circuit has held that "probable cause is an absolute defense to malicious prosecution." *Id.* at 1054.

In Idaho it is a question of law whether probable cause existed when, as here, the facts surrounding the investigation before filing and pursuing the lawsuit are undisputed. *Shannahan v. Gigray*, 962 P.2d 1046, 1051 (Idaho 1998). While Mr. Wilson disputes the City's motive and the accuracy of the Officers' testing, the actual circumstances of the arrests and the facts known to the Officers at the time the arrests were made are not

disputed. In *Lassiter*, the Ninth Circuit found that a prosecutor relying on signed statements by police officers who had probable cause to arrest the defendant was entitled to qualified immunity because those signed statements created sufficient probable cause to initiate the proceedings. *Lassiter*, 556 F.3d at 1054. Similarly here, the Court has found the Officers in this case had probable cause to arrest Mr. Wilson for DUI at the time of the traffic stop. Thus, it necessarily follows that a prosecution stemming from the arrest had probable cause as well. Because Mr. Wilson's malicious prosecution claim relies on the arrest as giving rise to the prosecution being unlawful, viewing the facts in the light most favorable to Mr. Wilson, the Court finds the Defendants had probable cause to initiate the prosecution against him. (Dkt. Nos. 1, 23.) Thus, no constitutional right was violated. Moreover, it is not dispositive for the probable cause determination that the prosecution in question ultimately was resolved in Mr. Wilson's favor. *Freeman*, 68 F.3d at 1189 ("[T]he mere fact a prosecution was unsuccessful does not mean it was not supported by probable cause."). Accordingly, the Court finds the Defendants have established the absence of any genuine issue of material fact that would preclude entry of summary judgment as a matter of law in favor of the Defendants on this claim and the motion is granted.

### C. *Wrongful Incarceration/False Imprisonment*

The Ninth Circuit has noted that the "Supreme Court has recognized that an individual has a liberty interest in being free from incarceration absent a criminal conviction." *Oviatt v. Pearce*, 954 F.2d 1470, 1473 (1992) (citing *Baker v. McCollan*, 443

U.S. 137 (1979)). This liberty interest stems from "the Fourteenth Amendment's protection against deprivations of liberty without due process of law." *Baker*, 443 U.S. at 142. Mr. Wilson contends his detention constituted a constitutional violation of this liberty interest because his arrest was invalid and the charges against him were dismissed.

Even though the Court has found above that there was probable cause to arrest Mr. Wilson this does not end the inquiry. The Ninth Circuit found that "even detention pursuant to a valid warrant but in the face of repeated protests of innocence will, after a lapse of time, deprive the accused of a constitutional liberty." *Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002). In *Fairley* a man was arrested on a warrant issued for his twin brother and spent twelve days in jail. *Id.* at 915. Similarly, in *Baker*, a man was arrested on an outstanding warrant for his brother who had claimed to be him on his driver's license and other documents. *Baker*, 443 U.S. at 141. The Ninth Circuit also found liability for wrongful incarceration where a man had been mistakenly dropped from the arraignment docket which significantly extended his time in jail. *Oviatt*, 954 F.2d at 1472. Here, Mr. Wilson does not contend that he was subject to a case of mistaken identity or that a procedural failure caused him to be incarcerated without due process. Instead, Mr. Wilson argues because the charges against him were ultimately dropped and because there was no probable cause for the arrest that his incarceration was wrongful. (Dkt. No. 1.) Mr. Wilson was in custody from approximately 10:30 p.m. until he was able to post bail at around 4:30 a.m. on July 5, 2007. *Id.*

Mr. Wilson cannot state a cause of action for wrongful incarceration because he cannot point to any right or due process that was violated. In *Oviatt*, the Ninth Circuit noted that the liberty interest that may be compromised by wrongful incarceration can arise from the federal constitution or from state law. In that case, Oregon had a law which placed a sixty day limit on pre-trial detention. *Oviatt*, 954 F.2d at 1475. There is no such law in Idaho, and Mr. Wilson has not pointed to any federal source for what amounts to a right to be released from jail sooner. As such, Mr. Wilson was afforded the process due to him. There was no violation of his constitutional rights. He was not wrongfully incarcerated or falsely imprisoned.

The Supreme Court explicitly rejected such a right in *Baker v. McCollan*, 443 U.S. 137 (1979). There the Court held that "since the probable cause standard for pretrial detention is the same as that for arrest, a person arrested pursuant to a warrant issued by a magistrate [judge] or a showing of probable-cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial." *Id.* at 143. While the Supreme Court held that the *Baker* plaintiff's innocence would be relevant for a tort proceeding for false imprisonment, it "is largely irrelevant to his claim of deprivation of liberty without due process of law." *Id.* at 146. Mr. Wilson cannot claim a constitutional violation based on the fact of his imprisonment and resulting dismissal of his charges.

Because Mr. Wilson has not established a right which was violated by the Defendants, there is no genuine issue of material fact that would warrant trial on this

**MEMORANDUM ORDER - 16**

claim. In addition, because he has failed to establish any constitutional violation, the Defendant Officers are entitled to qualified immunity from suit.

## CONCLUSION

There was probable cause to arrest Mr. Wilson. Because there was probable cause to arrest, there are no genuine material facts that would support a claim for unlawful arrest or malicious prosecution. Further, Mr. Wilson cannot sustain a claim for wrongful incarceration or false imprisonment because he has failed to identify any constitutional right that was violated. Having found this, the Court is satisfied that the Defendant Officers are entitled to qualified immunity from suit. Further, because Mr. Wilson is not a member of a protected class he has failed to state a claim for § 1985 conspiracy to deprive him of his constitutional rights. Finally, the municipal defendants are entitled to immunity from the suit.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Dkt. No. 18) is **GRANTED** and the case is dismissed in its **ENTIRETY**.

DATED: **November 19, 2010**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM ORDER - 17**